IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ROXANNE BROUGH,<br><br>    Plaintiff,<br><br>v.<br><br>O.C. TANNER COMPANY, and JOHN DOES 1-5,<br><br>    Defendants. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br><br>Case No. 2:16-CV-1143 TS<br><br>District Judge Ted Stewart |

This matter is before the Court on Defendant O.C. Tanner Company's Motion for Summary Judgment. For the reasons set forth below, the Court will grant the Motion.

I. BACKGROUND

The relevant undisputed facts are as follows. Defendant O.C. Tanner Company ("Defendant" or "O.C. Tanner") employed Plaintiff Roxanne Brough ("Plaintiff") for approximately thirty-seven years beginning in April 1977. Around mid-September 2014, Plaintiff's manager, Mr. Tyson Heaton, informed Plaintiff that her position at O.C. Tanner would soon be terminated. Plaintiff's employment with O.C. Tanner ended in November 2014.

Believing that she was unlawfully fired because of her age, Plaintiff retained Mr. B. Kent Morgan ("Mr. Morgan") to act as her attorney. Mr. Morgan initiated a series of meetings and conversations with various representatives of O.C. Tanner in an attempt to settle the dispute. Having failed to reach an agreement, Plaintiff filed a complaint with the EEOC on August 25, 2016. Plaintiff received a Right to Sue letter from the EEOC on September 28, 2016, and filed her Complaint against Defendants O.C. Tanner and Does 1-5 in this Court on November 3, 2016.

1

On October 8, 2018, Defendant filed the Motion for Summary Judgment now before the Court. Defendant argues Plaintiff's claims must be dismissed because she failed to timely comply with the filing requirement prescribed by 29 U.S.C. § 626(d)(1)(B). Plaintiff argues that the parties had reached an agreement to toll the statute in a series of meetings that took place between Mr. Morgan and representatives of O.C. Tanner.

The first of these meetings took place in early January 2015 with Ms. Charlotte Miller ("Ms. Miller"), who was Defendant's senior vice president of People and Great Work. During this first meeting, Ms. Miller proposed a separation agreement, which Plaintiff did not accept. Mr. Morgan stated that he would not file a charge with the appropriate administrative agency in order to allow for further negotiations, to which Ms. Miller responded, "thank you."

The second meeting took place in February at Ms. Miller's office. Mr. Morgan, Ms. Miller, and general counsel for O.C. Tanner, Mr. Brian Katz ("Mr. Katz") were all present. At this meeting, Mr. Morgan repeated "the fact that [he] was not going to seek administrative remedies with UALD or the EEOC pending [their] good-faith negotiations."[1] Ms. Miller responded, "That's good of you," and Mr. Katz responded, "Well, you - - you do what you have to do. I understand and appreciate that."[2]

On March 26, 2015, Mr. Morgan sent an email to Ms. Miller outlining the costs Plaintiff allegedly incurred as a result of her termination from O.C. Tanner, which totaled $434,670. Ms. Miller called Mr. Morgan sometime after receiving the list and asked Mr. Morgan to make an

---

[1] Docket No. 49-3, at 26:7–9.

[2] *Id.* at 26:18–22.

2

offer of settlement. Mr. Morgan stated that they would accept $50,000 in settlement. Ms. Miller told Mr. Morgan that she would get back to him with an answer.

In April 2015, Ms. Miller called Mr. Morgan to inform him that O.C. Tanner would not pay Plaintiff $50,000 to settle the matter and indicated that "this [was] going to conclude negotiation efforts."[3] Mr. Morgan called Ms. Miller back later that same month and asked if O.C. Tanner would consider a $40,000 settlement. Ms. Miller again said she would convey the offer to the decision makers. She also informed Mr. Morgan that she would soon be leaving her employment with O.C. Tanner and that Mr. Katz would take over the negotiations.

In October 2015, Mr. Katz and Mr. Morgan spoke regarding the case. Mr. Katz offered $30,000 to settle the matter with Plaintiff and stated he would put the offer in writing. Mr. Morgan agreed to discuss the offer with Plaintiff and again informed Mr. Katz that he was not filing any administrative complaints pending the negotiations. Mr. Katz confirmed that he was aware and had discussed it with Ms. Miller. Mr. Morgan then conveyed that he was willing to file with an administrative agency because the 300-day deadline was approaching. Mr. Katz responded, "No, let me do this letter."[4]

Mr. Morgan received the written offer on December 31, 2015, which set the deadline for acceptance to January 18, 2016. Plaintiff did not accept the offer and negotiations ceased.

Mr. Morgan testified that during these conversations, the various representatives of O.C. Tanner never expressly agreed to toll the 300-day statute of limitations. Instead, Mr. Morgan stated that the agreement was implied by the above-described conversations.

---

[3] *Id.* at 32:8–10.

[4] *Id.* at 37:5–7.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[5] The materiality requirement dictates that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."[6]

"At the summary judgment stage, a complainant cannot rest on mere allegations, but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true."[7] The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[8] "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."[9]

## III. DISCUSSION

A Plaintiff bringing a charge of discrimination under the Age Discrimination in Employment Act ("ADEA") must file the charge with the EEOC within 300 days of the alleged discriminatory act.[10] It is not disputed that Plaintiff failed to meet this deadline. "When a

---

[5] Fed. R. Civ. P. 56(a).

[6] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[7] *Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1258 (10th Cir. 2006) (internal quotation marks and citation omitted).

[8] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Sw. Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

[9] *Matsushita Elec. Indus.*, 475 U.S. at 587 (internal quotation marks and citation omitted).

[10] *Godwin v. Sw. Research Inst.*, 237 F. App'x 306, 307 (10th Cir. 2007); 29 U.S.C. § 626(d)(1)(B).

plaintiff fails to meet that deadline, [s]he may bring suit only if the requirement is waived or tolled."[11]

Here, Plaintiff argues that the deadline was tolled by agreement. As the party asserting that the deadline should be tolled, Plaintiff bears "the burden of establishing a factual basis for tolling the statute."[12] Plaintiff also argues that the 300-day filing requirement cannot act as a bar to suit in this case.

A. TOLLING

"Federal statutes of limitations can often be tolled by agreement."[13] Courts routinely uphold express agreements to extend the 300-day filing requirement to allow for ongoing good-faith settlement negotiations. However, Plaintiff has failed to produce evidence of a legally enforceable agreement. "Under the principles of basic contract law, 'a contract is not formed unless there is a meeting of the minds.'"[14] "Two elements, among others, are necessary to form an enforceable contract: (1) an offer and (2) an acceptance."[15] "For an offer to be one that would

---

[11] *Godwin*, 237 F. App'x at 307 (citing *Million v. Frank,* 47 F.3d 385, 389 (10th Cir. 1995)).

[12] *Aldrich v. McCulloch Properties, Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980).

[13] *Nat'l Credit Union Admin. Bd. v. Barclays Capital Inc.*, 785 F.3d 387, 392 (10th Cir. 2015) (citing *Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 107 (2013)).

[14] *Lebrecht v. Deep Blue Pools & Spas Inc.*, 2016 UT App 110, ¶ 13, 374 P.3d 1064, 1069 (quoting *Sackler v. Savin*, 897 P.2d 1217, 1220 (Utah 1995)). We look to State law to determine the legitimacy of the contract in non-diversity cases to the extent it doesn't conflict with federal common law. *See Madsen v. Prudential Fed. Sav. & Loan Ass'n*, 635 F.2d 797, 802–03 (10th Cir. 1980) ("The interpretation and enforcement of contracts is (sic) traditionally within the province of state courts, and the general presumption is in favor of applying state law.") (internal quotation marks and citations omitted); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Resolution Tr. Corp.*, 923 F. Supp. 1402, 1406 (D. Kan. 1996) ("Generally, when the court's federal question jurisdiction is invoked, federal law applies. However, this action involves an issue of contract interpretation, and there is no federal common law.") (citing *O'Melveny & Myers v. FDIC,* 512 U.S. 79, 83 (1994)).

[15] *Lebrecht*, 2016 UT App 110, ¶ 13, 374 P.3d 1064, 1069.

create a valid and binding contract, its terms must be definite and unambiguous. An acceptance must unconditionally assent to all material terms presented in the offer."[16]

Plaintiff alleges that her counsel, on numerous occasions, told representatives of O.C. Tanner that she would hold off on filing a charge with the appropriate administrative agency pending their negotiations. These statements do not include definite and unambiguous terms that amount to a valid offer.

Further, while both Ms. Miller and Mr. Katz expressed appreciation for Mr. Morgan's willingness to withhold filing at some point during their negotiations, neither ever expressly stated that they, in turn, would agree not to enforce the 300-day limitations period. While Mr. Morgan may have understood their appreciation to create an agreement, there is no evidence of a legally recognizable offer or acceptance and, therefore, no meeting of the minds. Without more, Plaintiff's allegation that the agreement was "inferred" is not sufficient to create an issue of fact regarding the creation of a verbal contract to toll the statute.[17]

In Plaintiff's Opposition, she argues that, in their discussion following Ms. Miller's departure from O.C. Tanner, Mr. Katz informed Mr. Morgan that Ms. Miller and Mr. Katz had "discussed the arrangement to hold off filing with the EEOC until the settlement talks broke down."[18] Defendant correctly responds that this assertion cannot be taken as true because it is not supported by any evidence before the Court. In Mr. Morgan's deposition, he states that, in his October 2015 conversation with Mr. Katz, he stated, "You know I'm not filing any administrative complaints at this time with the EEOC or UALD based upon our negotiations."[19]

---

[16] *Id.* (internal quotation marks and citations omitted).

[17] Docket No. 50, at 3.

[18] *Id.* at 5.

[19] Docket No. 49-3, at 38:24–39:1.

Mr. Morgan alleges that Mr. Katz responded, "Yeah. [Ms. Miller] and I discussed that."[20] Mr. Katz's recognition that Mr. Morgan was waiting for negotiations to conclude before filing a complaint on behalf of Plaintiff is not recognition of an actual tolling agreement. Defendant does not dispute that Ms. Miller and Mr. Katz were aware that Mr. Miller was not filing an administrative claim.[21] However, Plaintiff has not provided any evidence that either Mr. Katz or Ms. Miller communicated a willingness to toll the limitations period in exchange for Plaintiff waiting to file a compliant with the EEOC. Without evidence of a definite offer and acceptance, Plaintiff's argument is insufficient to toll the statute of limitations.[22]

The limitations period could also be tolled if the Court found evidence to support equitable tolling. "Equitable tolling may be warranted where the plaintiff has been 'lulled into inaction by her past employer,' 'actively misled,' or 'has in some extraordinary way been prevented from asserting his or her rights.'"[23] Plaintiff has not argued that the circumstances in this case amounted to active misleading, nor do the facts support such an argument. Mr. Katz did state that Mr. Morgan need not file a charge with the EEOC during their October 2015 discussion because Mr. Katz would get the $30,000 offer in writing. However, the evidence shows that this was done in good faith because Mr. Katz did provide such an offer. Additionally, Plaintiff was not "lulled" into not timely filing a complaint. Instead, Plaintiff, through her counsel, made an

---

[20] *Id.* at 39:2–3.

[21] Docket No. 51, at 6.

[22] *See Jones v. Mackey Price Thompson & Ostler*, 2015 UT 60, ¶ 31, 355 P.3d 1000, 1009 ("In order to create a contract, the parties must have a meeting of the minds on the integral features of an agreement." . . . "So long as there is any uncertainty or indefiniteness, or future negotiations or considerations to be had between the parties, there is not a ... contract.") (citations omitted).

[23] *Logan v. Cox Commc'ns Kan., LLC*, 407 F. App'x 305, 306 (10th Cir. 2011) (quoting *Biester v. Midwest Health Servs.*, 77 F.3d 1264, 1267 (10th Cir. 1996)).

independent decision not to file a charge with an administrative agency in order to avoid interference from a third party.[24]

Further, courts uniformly hold that an employer's efforts to negotiate with an employee does not, by itself, warrant equitable tolling.[25]

Finally, Plaintiff's long delay in filing a complaint with the EEOC from the time negotiations broke down strongly disfavors allowing tolling of the time limitation. Courts "have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights."[26] According to Mr. Morgan's deposition, negotiations broke down in January 2016. Plaintiff then waited over nine months to file a complaint with the EEOC on August 25 of that year. The only explanation offered for this long delay is that there was some delay in Plaintiff paying a retainer fee for legal services. Such a long delay in filing shows a lack of diligence in pursuing Plaintiff's claims and, therefore, weighs against tolling.

---

[24] *See* Docket No. 49-2, 17:20–18:21 ("As soon as you file with the EEOC, as the attorney, you now defer to the administrative agencies conducting their investigation . . . . [Y]ou answer their questions and perform according to their schedules and you lose your ability to negotiate in good faith.").

[25] *Mercado-Garcia v. Ponce Fed. Bank*, 979 F.2d 890, 895 (1st Cir. 1992) (rejecting plaintiff's argument that his employer's "offer to consider settlement, or its alleged requests that he refrain from filing an age discrimination complaint . . . constituted misleading conduct that adequately excuses his failure to meet the statutory deadlines"); *Pfister v. Allied Corp.*, 539 F. Supp. 224, 227 (S.D.N.Y. 1982) (rejecting plaintiff's argument that the employer "should not be permitted to assert the defense of statute of limitations for that period in which it participated in private settlement negotiations and thereby indirectly caused a delay"); *Tobin v. Trans Union Sys. Corp.*, 488 F. Supp. 622, 628 (E.D. Pa. 1980) (rejecting "plaintiff's argument that the informal negotiations with the defendant initiated at his request justify equitable suspension of the running of the 180-day period").

[26] *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96 (1990).

Based on the above, the Court finds that Plaintiff has failed to show a genuine issue of fact supporting tolling.

B. LEGITIMACY OF 300-DAY LIMITATION

Plaintiff also argues that the Tenth Circuit's recent ruling in *Lincoln v. BNSF Railway Co.*[27] does away with the 300-day filing requirement and, therefore, a lack of timely filing cannot be a bar to suit. Plaintiff, however, misconstrues the holding in *Lincoln.* As asserted by Defendant, the Tenth Circuit in *Lincoln* did not attempt to overrule the congressionally enacted 300-day filing requirement, but merely clarified that failure to timely file in compliance with the statute does not deprive the Court of jurisdiction.[28] Therefore, nothing in *Lincoln* suggests that Defendant may not raise an affirmative defense of failure to exhaust and seek dismissal for untimely filing, as Defendant has done here. In fact, *Lincoln* expressly allows for such a filing.[29]

IV. CONCLUSION

It is therefore

ORDERED that Plaintiff's Motion for Summary Judgment (Docket No. 49) is GRANTED. Plaintiff's Complaint shall be dismissed with prejudice.

DATED this 11th day of January, 2019.

BY THE COURT:

Ted Stewart
United States District Judge

---

[27] 900 F.3d 1166 (10th Cir. 2018).

[28] *Id.* at 1185 ("[A] plaintiff's failure to file an EEOC charge regarding a discrete employment incident merely permits the employer to raise an affirmative defense of failure to exhaust but does not bar a federal court from assuming jurisdiction over a claim.").

[29] *Id.*